UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X

THE LEGAL AID SOCIETY,

Plaintiff,

- against -

DANIEL F. MARTUSCELLO III, in his official capacity as Commissioner of the New York State Department of Corrections and Community Supervision,

Defendant.

--------------------------------------------------------------- X

26 Civ. 8295 (VSB)(RWL)

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant Martuscello*

Jessica Acosta-Pettyjohn
Assistant Attorney General
*Of Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ iv

PRELIMINARY STATEMENT ........ 1

STATEMENT OF THE FACTS ........ 2

A. LEGAL AID OPERATES HOTLINES FOR INCARCERATED INDIVIDUALS ........ 2

B. DOCCS TREATS ATTORNEY-CLIENT COMMUNICATION CONFIDENTIALLY ........ 3

C. CALLERS ARE EXPRESSLY WARNED THAT THE PUBLIC HELPLINES ARE MONITORED AND RECORDED ........ 3

D. LEGAL AID'S CLAIM AND REQUEST FOR RELIEF ........ 5

LEGAL STANDARD ........ 5

ARGUMENT ........ 6

POINT I LEGAL AID LACKS ARTICLE III STANDING BECAUSE IT PLEADS NO CONCRETE INJURY TO ITSELF AND CANNOT RELY ON UNIDENTIFIED CALLERS' RIGHTS ........ 7

A. The Complaint Does Not Plead a Concrete Injury to Legal Aid ........ 9

B. Legal Aid Cannot Base Standing on the Rights of Unidentified Prospective Clients ........ 10

C. The Complaint Does Not Establish Third-Party Standing Based on Current Clients ........ 10

POINT II LEGAL AID DOES NOT ALLEGE THE REAL AND IMMEDIATE THREAT OF FUTURE INJURY REQUIRED FOR PROSPECTIVE RELIEF ........ 11

POINT III PLAINTIFF FAILS TO PLEAD A COGNIZABLE FIRST AMENDMENT CLAIM .................................................... 13

A. Binding Second Circuit Authority Forecloses Legal Aid's Claimed Freestanding Associational Right ..................................…… 13

B. The Complaint Alleges a Channel Restriction, Not a Denial of Meaningful Access ..........................................................14

CONCLUSION.............................................................................................................16

## TABLE OF AUTHORITIES

**CASES** **Page(s)**

Am. Canoe Ass'n Inc. v. City of Louisa Water & Sewer Comm'n,
389 F.3d 536 (6th Cir. 2004) ........ 9

Am. Civil Liberties Union v. Clapper, 785 F.3d 787(2d Cir. 2015) ........ 12

Amidax Trading Group v. S.W.I.F.T. SCRL, 671 F.3d 140 (2d Cir. 2011) ........ 5

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ........ 5, 6

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ........ 6

Benjamin v. Fraser, 264 F.3d 175 (2d Cir. 2001) ........ 15

Burgess v. Harris Beach PLLC, 346 Fed. Appx. 658 (2009) ........ 13

Cacchillo v. Insmed, Inc., 638 F.3d 401 (2d Cir. 2011) ........ 7, 11

Caplin & Drysdale, Chartered v. United States, 491 U.S. 617 (1989) ........ 10

City of L.A. v. Lyons, 461 U.S. 95 (1983) ........ 11

Clapper v. Amnesty Int'l USA, 568 U.S. 398 (2013) ........ 7, 12

C.R. Corps v. LaSalle, 741 F. Supp. 3d 112 (S.D.N.Y. 2024)
*aff'd,* 184 F.4th 104 (2d Cir. 2026) ........ 8

Davis v. Goord, 320 F.3d 346 (2d Cir.2003) ........ 13

Denius v. Dunlap, 209 F.3d 944 (7th Cir. 2000) ........ 13

Deshawn E. ex rel. Charlotte E. v. Safir, 156 F.3d 340 (2d Cir. 1998) ........ 11

Doe v. McSweeney, No. 21-2191-CV, 2022 WL 1451383, (2d Cir. May 9, 2022) ........ 12

Dorce v. City of N.Y., 460 F. Supp. 3d 327 (S.D.N.Y. 2020) ........ 11

Emilee Carpenter, LLC v. James, 107 F.4th 92 (2d Cir. 2024) ........ 13

Fac., Alumni, & Students Opposed to Racial Preferences v. N.Y. Univ.,
11 F.4th 68 (2d Cir. 2021) ........ 12

Fed. Election Comm'n v. Akins, 524 U.S. 11 (1998) ........ 8

Groenow v. Williams, No. 13 Civ. 3961, 2014 WL 941276 (S.D.N.Y. Mar. 11, 2014) ………. 15

In re Welspun Litig.
16 Civ. 6792, 2019 WL 2174089 (S.D.N.Y. May 20, 2019) …………………….……. 11

Jacoby & Meyers, LLP v. Presiding Justices of the 1st, 2d, 3d & 4th Dep'ts
852 F.3d 178 (2d Cir. 2017)………………………………………………………... 14

Kowalski v. Tesmer, 543 U.S. 125 (2004) ……………………………………………… 10, 11

Lowery v. Westchester Cnty. Dep't of Correction
No. 15 Civ. 4577, 2017 WL 564674 (S.D.N.Y. Feb. 10, 2017)…………………………. 15

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) …………………………...………….7, 8

Makarova v. United States, 201 F.3d 110 (2d Cir. 2000) ……………………………….. 5

Marcavage v. City of N.Y., 689 F.3d 98 (2d Cir. 2012) ……………………………….…. 12

McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck
370 F.3d 275 (2d Cir. 2004) …. ……………………………………………….……11

Mercado v. Noem, 800 F. Supp. 3d 526 (S.D.N.Y. 2025) ………………………………. 13

Mercado v. Noem, 25-2922, 2026 WL 1382401 (2d Cir. Mar. 3, 2026) ……………………….. 13

Michael Grecco Prods., Inc. v. RADesign, Inc., 112 F.4th 144 (2d Cir. 2024) …..………………. 6

Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682 (2d Cir. 2013) ……………………………. 8

N.Y. Civ. Lib. Union v. N.Y.C. Trans. Auth., 684 F.3d 286 (2d Cir. 2012) ……………………… 8

Palisades Ests. EOM, LLC v. Cnty. of Rockland
23 Civ. 4215, 2025 WL 3687555 (S.D.N.Y. Dec. 19, 2025) ……………………….…. 8

Pell v. Procunier, 417 U.S. 817 (1974) …………………………………………………... 13, 14

Powers v. Ohio, 499 U.S. 400 (1991) ……………………………………………...…… 10

Pub. Citizen v. Dep't of Just., 491 U.S. 440 (1989) ……………………………….……….. 8

Roberts v. U.S. Jaycees, 468 U.S. 609 (1984) ……………………………………………….. 13

Schick v. Apker, No. 07 Civ. 5775, 2009 WL 2016926 (S.D.N.Y. July 10, 2009) ……….…..15

Selevan v. N.Y. Thruway Auth., 584 F.3d 82 (2d Cir. 2009) ……………………………….. 5

Sewell v. Bernardin, 795 F.3d 337 (2d Cir. 2015) ………………………………………………….. 6

Spokeo Inc. v. Robins, 578 U.S. 330 (2016) ………………………………………………….. 7, 8

Steel Co. v. Citizens for Better Env't, 523 U.S. 83 (1998) ………………..…………………….. 7

Summers v. Earth Island Inst., 555 U.S. 488 (2009) ……………..………………………….. 7, 11

Tzumi Innovations LLC v. Regan, 557 F. Supp. 3d 499 (S.D.N.Y. 2021) …………………….. 12

Volino v. Progressive Cas. Ins. Co.,
21 Civ. 6243, 2024 WL 1251185 (S.D.N.Y. Mar. 22, 2024) …………………………..…12

Warth v. Seldin, 422 U.S. 490 (1975) …..…………...…………………………………………….. 6

W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP
549 F.3d 100, 107 (2d Cir. 2008) …………………………………………………….. 8

**UNITED STATES CONSTITUTION**

Article III …………………………………………………………….... 1, 2, 6, 7, 8, 10

First Amendment ........................................................................... 1, 2, 5, 7, 8, 13, 14, 15, 16

**LOCAL CIVIL RULES**

Local Civil Rule 7.1 ........................................................................................................ 17

**FEDERAL RULES**

Federal Rules of Civil Procedure 12 ....................................................................... 1, 5, 6, 16

## PRELIMINARY STATEMENT

Defendant Daniel F. Martuscello III, in his official capacity as Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"), by his attorney, New York Attorney General Letitia James, respectfully submits this memorandum in support of his motion pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint (ECF No. 7). The Complaint challenges DOCCS's treatment of calls to two helplines operated by Plaintiff Legal Aid Society ("Legal Aid"), as ordinary calls from incarcerated individuals—calls that are announced as monitored and recorded—rather than as prearranged confidential legal calls. But the Complaint does not allege that DOCCS monitors properly scheduled legal calls, interferes with legal mail, or obstructs in-person legal visits. It instead seeks a constitutional entitlement to immediate, confidential access through Legal Aid's preferred channel. Neither Article III nor the First Amendment supplies that entitlement.

The action should be dismissed for three reasons. First, Legal Aid does not plausibly allege a concrete injury to itself, and therefore cannot establish standing to sue. The claimed chill concerns what incarcerated callers may decline to say, while the Complaint acknowledges that thousands of calls reach the helplines and that confidential legal calls, legal mail, and in-person visits remain available. Nor may Legal Aid rest standing on the rights of unidentified prospective clients because it has no existing relationship with those people, and the Complaint identifies no hindrance preventing an affected individual from asserting his or her own rights. Second, because Legal Aid seeks prospective declaratory and injunctive relief, it must allege a real and immediate threat of future injury to Legal Aid itself. Generalized assertions of delay, burden, and impaired mission do not satisfy that requirement. Third, the claim fails on the merits. Binding Second Circuit authority holds that a law firm has no freestanding First Amendment right to associate with clients

or petition on their behalf, and the Complaint does not allege that DOCCS has denied meaningful access to counsel. It alleges only that one intake channel is nonconfidential while established confidential channels remain available.

The Constitution protects meaningful access to counsel; it does not require DOCCS to convert a public intake line into an immediate, unmonitored legal line merely because that channel is more convenient. Because the Complaint pleads neither Article III standing nor a violation of Legal Aid's own First Amendment rights, it should be dismissed in its entirety.

## **STATEMENT OF ALLEGATIONS**

### **A. LEGAL AID OPERATES HOTLINES FOR INCARCERATED INDIVIDUALS**

Plaintiff alleges that "its mission [is] to provide robust legal services to indigent New Yorkers-including those in prison-Legal Aid established the Prisoners' Rights Project ('PRP'), the Incarcerated Client Services Unit ('ICSU'), and the Criminal Appeals Bureau ('CAB')." (*Id*. at ¶ 17). PRP engages in direct services, law reform, and civil rights litigation concerning conditions of confinement and issues related to incarceration (*Id*. at ¶ 18); ICSU provides legal representation to individuals held in New York City jails (*Id*. at ¶ 19); and CAB provides legal services to individuals challenging their criminal convictions on direct appeal and in post-conviction proceedings (*Id*. at ¶ 20). Plaintiff alleges that it operates two publicly available telephone helplines that provide free legal assistance to incarcerated individuals, and that, through the helplines, current and prospective "Legal Aid clients incarcerated in prisons may call to speak with legal staff to obtain legal advice, referrals, advocacy, and representation at no cost." (Comp. at ¶ 2). These helplines are claimed to facilitate the provision of its services and "to allow incarcerated persons to seek legal assistance regarding immediate harms they may face within prison, such as imminent violations of their civil rights, dangerous conditions in their environment, and threats of violence

from prison staff or other incarcerated persons. (*Id*. at ¶¶ 23, 26).

Plaintiff alleges that DOCCS has a policy that subjects non-legal phone calls to recording, and that DOCCS refuses to carve out phone calls made to the helplines. (*Id*. at ¶ 4).

**B. DOCCS TREATS ATTORNEY-CLIENT COMMUNICATION CONFIDENTIALLY**

Accepting the allegations of the Complaint as true for the purposes of this motion, "[u]nder DOCCS's legal call policy, a confidential call must be prearranged for a specific time with a specific attorney and approved by DOCCS personnel." (Comp. at ¶ 58). Indeed, Plaintiff acknowledges that DOCCS can designate attorney phone numbers as "private," and the documents annexed to the Complaint make clear that an incarcerated individual may add an attorney phone number to their list of contacts at any time. (Comp. at ¶ 42; Comp.: Exh. A, p. ECF 9.).

The Complaint further alleges that DOCCS permits confidential in-person legal visits, ordinarily upon 24 hours' notice. (Comp. ¶ 63.) The Complaint does not allege that DOCCS records a legal call scheduled under its confidential-call procedures, interferes with legal mail, or prevents approved legal visits. Its theory rests instead on DOCCS's refusal to exempt the two hotlines from the monitoring rules applicable to ordinary calls initiated by incarcerated individuals.

Legal Aid's objection is therefore not that confidential communication is unavailable, but that established confidential channels require advance coordination and may not provide the immediate access available through its public helplines. (*Id.* ¶¶ 6–7, 45, 47.) That distinction is central: the challenged policy does not bar attorney-client communication; it determines which telephone calls qualify for confidential treatment.

**C. CALLERS ARE EXPRESSLY WARNED THAT THE PUBLIC HELPLINES ARE MONITORED AND RECORDED**

According to Plaintiff, its helplines receive thousands of calls each year from individuals in prisons seeking legal help on a wide range of issues, including urgent and time-sensitive issues,

the reporting of sexual assault, abuse or brutality by prison staff, or serious medical needs requiring prompt intervention. (*Id.* at ¶¶ 3, 29-33). Plaintiff alleges that individuals also call the helplines seeking information about their criminal matters, where they share confidential information. (*Id.* at ¶¶ 29, 34).

It is clear to both the caller and recipient on phone calls to the hotlines that the calls are not confidential. "Given that the helplines are not confidential, Legal Aid's attorneys and staff must resort to communicating with incarcerated clients and prospective clients by scheduling confidential legal calls pursuant to DOCCS's policy, communicating through legal mail, or arranging in-person visits." (Comp. at ¶ 57).

Accepting the allegations of the Complaint as true for the purposes of this motion, Plaintiff alleges that DOCCS permits helpline calls to be monitored and recorded through a contracted non-party vendor, Securus Technologies LLC, who provides communications systems, call management, and other services to law enforcement agencies and correctional facilities. (*Id.* at ¶¶ 36-40). According to Plaintiff, by subjecting the helpline calls to surveillance and recording, DOCCS effectively chills candid communication between incarcerated people and Legal Aid, which in turn impairs and hampers Legal Aid's protected legal advocacy and right to associational activity. (*Id.* at ¶¶ 5, 43-44).

Plaintiff alleges that the monitoring and recording of the helplines also exposes Plaintiff to harm because it is "unable to continue privileged attorney-client conversations" regarding a client's criminal appeal or ongoing litigation. (*Id.* at ¶¶ 48-49). Plaintiff alleges that clients who speak on the recorded line are vulnerable to retaliation from other incarcerated individuals and DOCCS staff as the perception of seeking help could result in retaliation, and that some call just to seek a legal call because they fear retaliation in seeking legal assistance. (*Id.* at ¶¶ 46, 50-51).

Plaintiff claims that "DOCCS's ability to subject the helplines' calls to monitoring and recording chills Legal Aid's provision of legal services to incarcerated callers" as Plaintiff cannot effectively and promptly address client concerns "where it or an incarcerated caller is forced to defer a fulsome discussion of legal issues until a confidential call can take place," and as "helplines do not guarantee incarcerated callers' confidentiality, Legal Aid cannot fully carry out its mission of advocating for and representing incarcerated people." (*Id.* at ¶¶ 52-53, 55).

Because the helplines are not confidential, Legal Aid alleges that its attorneys and staff must move sensitive discussions to a prearranged confidential legal call, legal mail, or an in-person visit, and that doing so may take days or weeks. (*Id.* ¶¶ 57–63.)

**D. LEGAL AID'S CLAIM AND REQUEST FOR RELIEF**

Plaintiff filed this Complaint, containing one cause of action under the First Amendment, and seeks declaratory and injunctive relief requiring DOCCS to end its practice of recording and monitoring calls to the helplines. (*Id.* at ¶¶ 9, 78-79).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires that a complaint be dismissed where the court lacks subject matter jurisdiction. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In addition, the pleading standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), is applicable to motions to dismiss for lack of standing under Rule 12(b)(1). *See Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) ("to survive [a] Rule 12(b)(1) motion to dismiss, [plaintiff] must allege facts that affirmatively and plausibly suggest that it has standing to sue") (citing *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)).

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The pleading requirements under Rule 8 of the Federal Rules of Civil Procedure "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Where a Plaintiff has failed to "nudge[] [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id*. at 570.

A court assessing the sufficiency of a complaint must disregard legal labels or conclusions, which are not entitled to the presumption of the truth. *Iqbal*, 556 U.S. at 678. Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Dismissal under Rule 12(b)(6) is therefore appropriate only if 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 150 (2d Cir. 2024) (quoting *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015)).

**ARGUMENT**

Standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political

branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). The "irreducible constitutional minimum" of standing requires a plaintiff to "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo*, 568 U.S. at 338.

Plaintiff's Complaint fails to plausibly allege that Plaintiff has suffered—and continues to suffer—an injury-in-fact, the "'[f]irst and foremost' of standing's three elements." *Id.* at 338–39 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). This failing further dooms Plaintiff's demand for declaratory and injunctive relief, which requires it to establish "the three familiar elements of standing: injury in fact, causation, and redressability." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

The Complaint is pleaded as an invasion of Legal Aid's own First Amendment rights. Plaintiff does not bring this action to assert the rights of the individuals whom it represents as a claim under the First, Fifth, or Sixth Amendments. Indeed, it could not. Legal Aid must establish its own Article III injury and its own cause of action; it cannot convert an alleged chill experienced by callers into an injury to itself merely by alleging that the chill makes representation less efficient. And if Legal Aid instead relies on its clients' rights, it must satisfy the distinct requirements for third-party standing. The Complaint does neither.

**POINT I**

**LEGAL AID LACKS ARTICLE III STANDING BECAUSE IT PLEADS NO CONCRETE INJURY TO ITSELF AND CANNOT RELY ON UNIDENTIFIED CALLERS' RIGHTS**

Legal Aid must allege an injury to a legally protected interest of its own. The Complaint

alleges that recording and monitoring may cause callers to withhold information and may require Legal Aid to move sensitive conversations to another channel. But it does not allege that DOCCS prohibits Legal Aid from speaking to, receiving calls from, filing any claim on behalf of, or representing any identified client, using the confidential procedures DOCCS provides. A burden on Legal Aid's preferred method of intake is not, without more, a concrete invasion of Legal Aid's own First Amendment rights.

To establish Article III standing, a plaintiff must show: (1) a concrete and particularized injury; (2) a causal connection between the injury and the challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable judicial decision. *Palisades Ests. EOM, LLC v. Cnty. of Rockland*, 23 Civ. 4215, 2025 WL 3687555, at *3 (S.D.N.Y. Dec. 19, 2025) (citing *Spokeo,* 578 U.S. at 338). The "injury-in-fact" requirement means that a plaintiff must have *personally* suffered an injury. *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008); *see, e.g.*, *Lujan*, 504 U.S. at 560 n.1. Failure to establish any one of these elements is fatal to standing. *Spokeo*, 578 U.S. at 338.

When First Amendment principles are at stake, the rules of standing are "somewhat relaxed" to avoid an irreparable chilling effect on protected speech. *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013). However, Plaintiff must still demonstrate an injury in fact. *See C.R. Corps v. LaSalle*, 741 F. Supp. 3d 112, 137–38 (S.D.N.Y. 2024), *aff'd,* 184 F.4th 104 (2d Cir. 2026); *see Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998) ("The 'injury in fact' that respondents have suffered consists of their inability to obtain information."); *Pub. Citizen v. Dep't of Just.*, 491 U.S. 440, 449 (1989) (acknowledging "a sufficiently distinct injury to provide standing" where plaintiffs were denied information that would allow them to "scrutinize" the activities of government); *see also N.Y. Civ. Lib. Union v. N.Y.C. Trans. Auth.*, 684 F.3d 286, 295

(2d Cir. 2012) (holding that denial of access to administrative hearings constituted injury-in-fact); *accord Am. Canoe Ass'n Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 542 (6th Cir. 2004) (holding that denial of access to statutorily required disclosures constituted injury-in-fact).

**A. The Complaint Does Not Plead a Concrete Injury to Legal Aid**

The asserted chilling effect does not establish organizational standing. Legal Aid alleges that monitoring impairs its mission and forces it to spend additional time arranging confidential communications. Yet an organization may not manufacture standing merely by choosing to expend resources in response to conduct that has not invaded a legally protected interest of the organization itself. Here, the Complaint fails to identify any representation Legal Aid was unable to undertake, no claim it was unable to file, no deadline it missed, and no confidential communication DOCCS refused to facilitate through an established channel. The pleaded burden is therefore a consequence of how Legal Aid chooses to deliver services, not the denial of a constitutional right.

The Complaint's own allegations confirm that confidential access remains available through prearranged legal calls, legal mail, and in-person visits. (Comp. ¶¶ 21, 57–63.) Legal Aid emphasizes that those methods may require coordination and time. But delay inherent in arranging a confidential communication is not the same as exclusion from communication, particularly where the challenged communication begins with an express monitoring warning. The policy distinguishes between an immediate intake call and a confidential legal communication; it does not eliminate the latter.

Nor does the alleged deterrence show that Legal Aid itself has been silenced. The Complaint alleges that the helplines receive thousands of calls each year, including calls about urgent matters. (Comp. ¶¶ 3, 29–33.) That volume does not disprove that some callers may speak less candidly, but it underscores the jurisdictional defect: the alleged chill belongs to callers, while

Legal Aid remains able to receive calls, provide preliminary assistance, and continue confidential communications through other means. Article III does not permit Legal Aid to substitute a third party's asserted hesitation for injury to itself.

### B. Legal Aid Cannot Base Standing on the Rights of Unidentified Prospective Clients

Legal Aid alternatively invokes injuries allegedly suffered by current and prospective callers. But standing ordinarily must rest on the plaintiff's own rights. The limited exception for third-party standing requires both a sufficiently close relationship with the rights-holder and a genuine hindrance to that person's ability to protect his or her own interests. *See Powers v. Ohio*, 499 U.S. 400, 411 (1991). Legal Aid cannot satisfy those requirements by referring generally to an undefined population of people who might call in the future. An unidentified future client with whom no attorney-client relationship exists does not satisfy the close-relationship requirement. *See Kowalski v. Tesmer*, 543 U.S. 125, 131–32 (2004) (rejecting third-party standing where the attorneys relied on hypothetical future attorney-client relationships).

The Complaint alleges neither an existing attorney-client relationship with prospective client nor facts showing that any particular prospective client is unable to vindicate his or her own rights. As a result, Legal Aid cannot establish standing based on members of an undefined population who may call a helpline in the future.

### C. The Complaint Does Not Establish Third-Party Standing Based on Current Clients

An existing attorney-client relationship may satisfy the close-relationship component in an appropriate case. *See Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989). The pleading here, however, does not tie the challenged policy to any identified current client or any particular constitutional injury. It groups together existing clients, prospective clients, and other incarcerated callers, without alleging which rights-holder was deterred, what protected

communication was prevented, or how the monitoring of a warned public call violated that person's rights. (Comp. ¶¶ 6, 21, 28, 34.) Such is insufficient to support third-party standing.

The Complaint also does not plausibly allege hindrance. It identifies confidential legal calls, legal mail, and in-person visits through which a current client can communicate with counsel, supply facts, and pursue relief. (Comp. ¶¶ 24, 47, 57–63.) It does not allege that any client is legally barred from suing, lacks access to the courts, or is practically incapable of presenting a claim through those channels. The fact that a helpline is faster or more convenient does not establish the obstacle required to transfer a client's constitutional claim to counsel. *See Kowalski*, 543 U.S. at 131–32.

As Plaintiff fails to establish standing, this matter should be dismissed in its entirety.

## POINT II

## LEGAL AID DOES NOT ALLEGE THE REAL AND IMMEDIATE THREAT OF FUTURE INJURY REQUIRED FOR PROSPECTIVE RELIEF

Legal Aid seeks prospective declaratory and injunctive relief, including an order permanently enjoining DOCCS from monitoring and recording calls to the helplines. (Comp. at 11.) To obtain either form of relief, Legal Aid must plausibly allege a real and immediate threat that it will suffer a legally cognizable future injury. It has not done so.

To obtain declaratory relief, a plaintiff must establish "the three familiar elements of standing: injury in fact, causation, and redressability." *Cacchillo,* 638 F.3d at 404 (citing *Summers*, 555 U.S. at 493). "A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement ...." *McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 284 (2d Cir. 2004) (quoting *Deshawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)); *accord In re Welspun Litig*., 16 Civ. 6792, 2019 WL 2174089, at *6 (S.D.N.Y. May 20, 2019). Instead, "[t]o obtain prospective relief, such as a declaratory judgment or an

injunction," "a plaintiff must show ... 'a sufficient likelihood that he [or she] will again be wronged in a similar way.'" *Marcavage v. City of N.Y.*, 689 F.3d 98, 103 (2d Cir. 2012) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983)); *accord Dorce v. City of N.Y.*, 460 F. Supp. 3d 327, 342 (S.D.N.Y. 2020). Alleging "possible future injury" is insufficient. *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) (quoting *Clapper*, 568 U.S. at 409); *see also Tzumi Innovations LLC v. Regan*, 557 F. Supp. 3d 499, 508–09 (S.D.N.Y. 2021). A putative injury that occurs only at the end of a "highly attenuated chain of possibilities" is not sufficient to confer the requisite standing for declaratory relief. *See Fac., Alumni, & Students Opposed to Racial Preferences v. N.Y. Univ.*, 11 F.4th 68, 76 (2d Cir. 2021); *accord Doe v. McSweeney*, No. 21-2191-CV, 2022 WL 1451383, at *1 (2d Cir. May 9, 2022) (summary order); *Volino v. Progressive Cas. Ins. Co.*, 21 Civ. 6243, 2024 WL 1251185, at *3 (S.D.N.Y. Mar. 22, 2024).

The Complaint does not satisfy that forward-looking standard. It alleges that the monitoring policy continues, but the continued existence of a policy is not itself a future injury to Legal Aid. The pleading identifies no pending representation, scheduled communication, or imminent legal matter in which DOCCS will deny Legal Aid confidential access. At most, it alleges that Legal Aid will continue to use the helplines and may again need to transfer a sensitive discussion to an established confidential channel. That is not a real and immediate threat that Legal Aid will suffer the invasion of a constitutional right.

The alleged future harm also depends on choices and events involving unidentified third parties: a caller must contact a helpline, wish to disclose sensitive information on that call, decline or be unable to use another confidential method, and then withhold information because of monitoring. Those possibilities may describe why Legal Aid prefers whitelisting, but they do not establish a certainly impending injury to Legal Aid itself. (Comp. ¶¶ 46, 50–51.)

Because Legal Aid pleads neither a cognizable injury to itself nor a real and immediate threat of such injury, its requests for declaratory and injunctive relief should be dismissed.

## POINT III

## PLAINTIFF FAILS TO PLEAD A COGNIZABLE FIRST AMENDMENT CLAIM

Even if Legal Aid had standing, the Complaint would fail on the merits. It does not identify a First Amendment right held by Legal Aid that requires DOCCS to make an intake line confidential. Nor does it allege that DOCCS denies incarcerated people meaningful access to counsel. It challenges only the conditions attached to one method of initiating contact while acknowledging that confidential legal calls, mail, and visits remain available.

Implicit in the First Amendment is the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 107 (2d Cir. 2024) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984)). In order to survive a motion to dismiss a First Amendment claim, a plaintiff must allege, *inter alia*, "that the speech or conduct at issue was protected." *Burgess v. Harris Beach PLLC*, 346 Fed. Appx. 658, 660 (2009) (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir.2003)). The Complaint does not.

### A. Binding Second Circuit Authority Forecloses Legal Aid's Claimed Freestanding Associational Right

"The right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association and petition." *Mercado v. Noem*, 800 F. Supp. 3d 526, 577 (S.D.N.Y. 2025), *appeal dismissed sub nom. Barco Mercado v. Noem*, 25-2922, 2026 WL 1382401 (2d Cir. Mar. 3, 2026) (quoting *Denius v. Dunlap*, 209 F.3d 944, 953 (7th Cir. 2000)); *see also Pell v. Procunier*, 417 U.S. 817, 822 (1974).

The controlling rule is supplied by *Jacoby & Meyers, LLP v. Presiding Justices of the 1st, 2d, 3d & 4th Dep'ts*, 852 F.3d 178 (2d Cir. 2017). There, the Second Circuit held that law firms do not possess their own First Amendment right to associate with clients or a derivative right to petition on clients' behalf. *Id.* at 187. Clients may possess rights to retain counsel, communicate, and seek redress, but counsel cannot repackage those client-centered rights as a freestanding constitutional entitlement belonging to the law firm.

Incarceration does not extinguish a person's constitutional interest in access to counsel, but that interest remains subject to restrictions reasonably related to legitimate correctional objectives, and the Constitution requires meaningful access rather than the unrestricted use of every preferred communication method. *See Pell*, 417 U.S. at 822. The Complaint does not allege that any caller was denied counsel or that access became an "empty formality." It alleges that a public helpline is monitored and that confidential discussions must proceed through designated channels. That distinction defeats the claim as pleaded.

Legal Aid alleges interference with its own associational and advocacy rights, but *Jacoby & Meyers* forecloses that theory. And the Complaint does not plead a claim on behalf of an identified client who was prevented from retaining counsel, communicating confidentially, or petitioning a court. Without either a cognizable right belonging to Legal Aid or a properly pleaded client-centered claim, the First Amendment count fails as a matter of law.

### B. The Complaint Alleges a Channel Restriction, Not a Denial of Meaningful Access

The Complaint challenges DOCCS's refusal to place Legal Aid's public helplines on a private-number list. (Comp. ¶¶ 44, 67.) But it simultaneously alleges that confidential communication is available through prearranged legal calls, legal mail, and in-person visits. (*Id.* ¶¶ 24, 47, 57–63.) The constitutional question is therefore not whether whitelisting would make

Legal Aid's work easier or faster; it is whether the existing framework denies meaningful access to counsel. The pleaded facts show that it does not.

The pleading does not allege that DOCCS records calls properly arranged under its confidential legal-call procedures. It instead alleges that ordinary calls—including calls to the helplines—carry an announcement informing both sides that the call is monitored and may be disclosed to law enforcement. (Comp., Ex. A at ECF 69.) That warning does not resolve every question about the consequences of monitoring, but it confirms that the challenged calls are not represented as confidential legal communications. Legal Aid remains free to use the call for intake and then move privileged or sensitive discussion to a designated confidential channel.

Cases addressing incarcerated persons' access to counsel reinforce the same distinction. A restriction is unconstitutional when it unreasonably burdens the opportunity to consult counsel and prepare a case; denial of one communication method ordinarily does not suffice when other meaningful avenues remain. *See Benjamin v. Fraser*, 264 F.3d 175, 187 (2d Cir. 2001); *Lowery v. Westchester Cnty. Dep't of Correction*, No. 15 Civ. 4577, 2017 WL 564674, at *3–4 (S.D.N.Y. Feb. 10, 2017); *Groenow v. Williams*, No. 13 Civ. 3961, 2014 WL 941276, at *7 (S.D.N.Y. Mar. 11, 2014); *Schick v. Apker*, No. 07 Civ. 5775, 2009 WL 2016926, at *2 (S.D.N.Y. July 10, 2009). Here, the Complaint alleges neither a categorical ban on attorney contacts nor repeated obstruction that caused counsel to abandon communications. It alleges that sensitive discussions begun through a recorded public line must continue through an unmonitored legal call, mail, or visit.

Legal Aid's allegations of delay and administrative burden do not bridge that gap. The Complaint acknowledges that legal visits ordinarily require 24 hours' notice and that confidential calls must be arranged. (Comp. ¶¶ 58, 63.) Those procedures may be less immediate than a helpline, but the First Amendment does not guarantee counsel's preferred balance between speed

and confidentiality. Because meaningful confidential access remains available, the refusal to make an unrestricted public intake number private does not plausibly state a constitutional violation.

In short, the Complaint identifies no First Amendment right belonging to Legal Aid that requires confidential treatment of its public helplines, and it alleges no denial of meaningful access to counsel for any identified incarcerated person. The sole claim should therefore be dismissed under Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the Complaint in its entirety. Legal Aid has not pleaded a concrete injury to itself, cannot rest jurisdiction on the rights of unidentified callers, does not allege the imminent future injury required for prospective relief, and identifies no First Amendment right requiring DOCCS to make a public intake line confidential where meaningful confidential channels remain available.

Dated: November 23, 2026

LETITIA JAMES
Attorney General
State of New York
Attorney for Defendant

By: _/s/ Jessica Acosta-Pettyjohn___
Jessica Acosta-Pettyjohn
Assistant Attorney General
28 Liberty Street
New York, NY 10005
Tel: (212) 416-6551
Jessica.Acosta-Pettyjohn@ag.ny.gov

To: (Via ECF)
Attorneys of Record

**CERTIFICATION UNDER LOCAL CIVIL RULE 7.1**

The undersigned hereby certifies that the foregoing memorandum of law contains 4,891 words and complies with the word-count limitations provided in Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, complies with the word count limit set forth under Local Civil Rule 7.1, excluding the parts exempted by Local Civil Rule 7.1, which are the caption, cover page, table of contents, table of authorities, signature block, and this certification page. In preparing this certification page, I have relied on the word count of Microsoft Word 365, the word-processing system used to prepare this certification.

Dated: November 23, 2026

LETITIA JAMES
Attorney General
State of New York
Attorney for Defendant

By: */s/ Jessica Acosta-Pettyjohn*__
Jessica Acosta-Pettyjohn
Assistant Attorney General
28 Liberty Street
New York, NY 10005
Tel: (212) 416-6551
Jessica.Acosta-Pettyjohn@ag.ny.gov